WILLIAM TERWILLIGER et al., Respondents, *v.* REUBEN C. BEALS, Appellant.

(GENERAL TERM, FOURTH DEPARTMENT, JUNE, 1872.)

A selling factor is bound, when reasonably requested, to make and present to his principal a full and complete statement of his dealings and the accounts between them.

Accordingly, where the principal applied to his factor, to whom he had entrusted goods for sale under an agency of indefinite duration, for return of the goods, and notified him of a termination of the agency, and the factor claiming a lien for advances and commissions declined to surrender, and upon the principal's offer to pay the amount of the claims, substantially refused to make a statement of them,—*Held*, that the lien was forfeited, and the principal could maintain replevin for the goods.

*Held*, also, that the rules in relation to tender as between debtor and creditor were not applicable.

AN appeal from a judgment in favor of the plaintiffs on the report of a referee.

The action was replevin.

The plaintiffs were manufacturers of iron safes in the city of New York, and the defendant was their selling factor in the city of Syracuse. The plaintiffs commenced sending the defendant safes for sale in June, 1868, upon the following terms: The safes were to be sold at the list price fixed by the plaintiffs, and the defendant was to have twenty per cent thereof for his compensation and expenses; the plaintiffs to pay the freight to the store of the defendant; and all the other charges and expenses to be paid by the defendant, and he to guarantee payment of sales.

On the 20th day of April, 1870, there were two safes in the defendant's possession, sent forward under this arrangement; both received by him in March previous. The price list of one was $170; of the other, $180.

Upon that day the plaintiffs, at Syracuse, gave notice to the defendant that they terminated the arrangement existing between them, demand the safes, which the defendant refused to deliver up; and this action was commenced June 20, 1870.

The defendant claimed that, by the terms of the contract, he was to have the exclusive agency at Syracuse. This the plaintiffs deny, and the referee does not find upon the question. At the time the safes in question were forwarded to the defendant, one Gifford was selling safes in Syracuse as the plaintiffs' agent. By the terms of the contract between the parties nothing was agreed upon as to the length of time defendant should act as plaintiffs' factor; nor was it provided that any previous notice should be given of its termination by either party.

Upon the trial it appeared that the defendant had advanced upon these safes $26.51 freight and cartage. The defendant claimed a commission on a safe sold to a Mr. Fenton by Gifford, on the ground that he commenced the negotiation for the sale. The questions litigated before the referee, and discussed on the argument of this appeal, relate to the defendant's lien on the safe, and whether the same was extinguished by the tender of the plaintiffs or lost by the conduct of the defendant himself; and the evidence on these points is referred to in the opinion of the court.

*Wm. C. Ruger*, for the appellant.

*L. W. Hall*, for the respondent.

Present—Johnson, P. J.; Talcott and Barker, JJ.

Barker, J. That a selling factor has a lien on the goods of the principal, in his hands, as a security for his advances,

commissions and liabilities, personally incurred in the business carried on, is an undisputed proposition. Before the principal can reclaim his property from the hands of his agent, he must fully discharge such lien by payment, or, what in law is equivalent to payment, tender the amount justly due the factor. The lien may also be discharged by some wrongful act of the agent, or breach of duty on his part. That the defendant had a lien on these safes, at the time of the demand and refusal, is established by the evidence and findings of the referee. That the plaintiffs made a full and technical tender of the amount of such lien, as the same was established on the trial, is not claimed.

The precise point relied upon by the plaintiffs is that the defendant, by his conduct, waived and relinquished such lien; and that they were entitled to the possession of the property without a payment of his advances and commissions. This proposition seems to be fully supported by the evidence and circumstances disclosed on the trial.

It seems too clear for discussion that a selling factor, like other agents, is in duty bound, whenever reasonably requested so to do, to make and present to his principal a full and complete statement of the dealings and state of the accounts between the parties, to the end that the principal make known concerning his own affairs, and, in some instances, as in this, to ascertain the obligations he may be under to his agent, and how he may proceed to terminate the agency and reclaim his property. The information sought by a demand of a statement is presumed to be solely with the agent; and that the principal is ignorant of the true state of affairs, as connected with the business confided to his agent. Such presumption must be the foundation of this unyielding rule.

In this case it does not appear that the plaintiffs knew the extent of the defendant's lien, when one of them had an interview with the defendant, with the avowed object of terminating his agency. Nor could they have known the exact amount of it, so as to make a tender of the same. The very nature of the defendant's claim, as sought to be established on

the trial, and not disclosed before the action was commenced, made it impossible for the plaintiffs to know the extent and justice of it. The defendant claims a lien for freight paid on these two safes, and for prospective commissions on a sale of the same. Now when the plaintiffs, at the defendant's own place of business, offered to pay him his liens and charges, he was bound to inform them of the amount of the advances made on the property, and the state of negotiations for the sale of the safes, or either of them, if any were on foot, that they might examine into the same, and ascertain whether they were well founded or not; and, if found to be so, then the exact sum to be paid would be before them.

On the trial Wm. H. Terwilliger, one of the plaintiffs, testified, in substance, as follows: "I asked defendant for the possession of the safes. He said he would not give them up until paid for. I told him I wanted to close up the business with him, and wanted either the safes or the pay for them; and he said he would not pay for the safes until he sold them. He said he had been to some expense for freight on them. I told him I was ready to pay any charges on them, and asked him how much. He said he did not know; that possession was nine points in law, and that he had these nine points, and that he was going to keep them. I told him that I did not want any trouble, and hoped he would give them up; and that if he did not I should commence proceedings to get them. He said he would take counsel. I said, all right, and that I would give him one hour to do so. He did so. Upon his return I took out my money and asked him what his charges were, and that I was ready to pay him. He refused to take it, and said he had been advised to keep the safes; and thereupon I commenced this action." This witness, on his cross-examination, gave further evidence showing his offer to pay any charges the defendant might have.

The defendant, who was examined as a witness in his own behalf, testified that the plaintiff, Wm. H. Terwilliger, said to him that he would send for the safes. "I then said, you can have them by paying charges. He said he should come and

Terwilliger *v.* Beals.

take them.  He then took out his money and said, I will pay your charges.  I told him I did not know what my charges were until I hunted up my bills; but that, before I did anything about it, I would take counsel.  He did not offer any money.  I then went, saw counsel and went back.  He asked me what I had made up my mind to do.  I told him that I should hold the safes until I was fairly settled with.  He did not say anything about paying me then, and took no money out.  I heard no more from him until he came to my house with the sheriff."  Upon the trial the defendant made no claim that he had at any time presented an account of his advances, or the amount of commissions claimed.  The referee found as a fact that, at the time of the demand, the plaintiffs offered to pay the freight and charges incurred by the defendant on the same.

The defendant's conduct put him in fault, and he omitted a plain and reasonable duty he owed the plaintiffs; and thereby such lien as he may have had on the goods was waived and extinguished.  He could no longer claim to hold the goods, under his lien, after his omission and refusal to state the amount of his claim.  The learned counsel for the defendant has sought to make applicable to this case the rules in relation to tenders, that govern as between debtor and creditor.  They do not fairly apply here.

It is unnecessary to consider whether, upon the trial, the defendant made a case entitling him to commissions or not, on one or both of the safes.  The single question on the trial was, had the defendant, by his own conduct, lost his special property in the safes; and were the plaintiffs entitled to possession under and by virtue of their general property in the same.  Although the plaintiffs have reclaimed their property, they are personally liable to the defendant for any advance or commissions due him.  The judgment is affirmed.

Judgment affirmed.